334 So.2d 406 (1976)
Walter SHELTON and Rosa Lee Shelton
v.
AETNA CASUALTY AND SURETY COMPANY.
No. 57283.
Supreme Court of Louisiana.
June 21, 1976.
*407 Walton J. Barnes, Barnes & Barnes, Baton Rouge, for plaintiffs-applicants.
William A. Norfolk, Taylor, Porter, Brooks & Phillips, Baton Rouge, for defendant-respondent.
CALOGERO, Justice.
This is a suit for damages for personal injury to Rosa Lee Shelton brought by Mrs. Shelton and her husband Walter Shelton against Aetna Casualty and Surety Company, the liability insurer of their son Merle Shelton. Following the filing of this suit, Walter Shelton died and Iris Shelton Ritter, Barney L. Shelton and Lois S. Matherne were substituted as parties *408 plaintiffs for the special damages which Walter Shelton claimed as head and master of the community. La.C.C.P. art. 801.
Mrs. Shelton's injury occurred when she slipped and fell in the yard of her son's property. The ownership of the premises and the residences of the parties involved are somewhat unusual. Merle Shelton, the son, owned adjoining Lots 1 and 2 of Square 22 in Standard Heights Subdivision, Parish of East Baton Rouge. His home is located on the front of Lot 1 facing Linwood Street. At the rear of this lot, in a separate structure from the house, is an apartment occupied at the time by Rosa Lee and Walter Shelton, plaintiffs in this suit, under the terms of a usufruct granted them by their son, the owner of the property. Lot 2 is unoccupied except for a wooden garage to the rear of the lot and a concrete driveway leading to the garage. Next to the garage is a garden area, a porch swing hanging from an A-frame and a set of lawn chairs.
The events leading up to Mrs. Shelton's fall and injury were succinctly set forth in the court of appeal decision, Shelton v. Aetna Casualty and Surety Co., 322 So.2d 308 (La.App. 1st Cir. 1975), and are repeated here, as follows:
"Early in the morning on June 3, 1973, property owner mixed a solution of lime, baking soda and water for the purpose of removing some flaking paint from the garage. After brushing the solution on the side of the brown-painted garage, he washed it down with a hose and departed at approximately 10:00 A.M. for the remainder of the day.
At approximately 6:00 P.M. that same day the elder Mrs. Shelton exited her apartment on Lot 1 and proceeded across the driveway toward the swing area on Lot 2 to sit and converse with her husband and another elderly friend, Mr. Edmond C. Lively. As the seventy-one year old mother reached the far edge of the concrete driveway and stepped upon the dirt pathway leading to the swing, her feet allegedly slipped on the residue which was washed from the garage, and she landed heavily in a sitting position. She was immediately transported to the Baton Rouge General Hospital where she was confined for the next eleven days suffering from a compression fracture of the spine at the fourth lumbar level (L-4). After discharge from the hospital, Dr. F. C. McMains, an orthopedic surgeon, continued to care for her as she still experienced radiating leg pains and required a back support. She was left with a 15 percent permanent residual disability of the body as a result of the fall.
Mrs. Shelton testified that she did not notice anything unusual about the surface of the ground, either before or after she fell, but that some `goo' clung to her dress following the mishap. She acknowledged that she was familiar with and frequented the area with her husband. She also acknowledged that the spot where she slipped had been filed with fresh dirt prior to the incident. She, as well as Mr. Lively, asserted that the residue from the garage had formed a foamy substance which, because of the brown color of the paint being removed, could hardly be distinguished from the ground itself. Mrs. Shelton contended that because of the slippery nature of the substance and its camouflaged color she sustained the injuries of which she complained.
It is also clear from the record that the property owner knew that the area immediately adjacent to the garage was regularly used by his mother and father. It also appeared that the property owner did not attempt to clean or barricade the area to prevent persons from coming in contact with the removed paint and residue."
The district court concluded that Mrs. Shelton was neither a trespasser nor an invitee, but rather a licensee and that as *409 such she was owed a duty of simply being warned of any dangerous conditions which were known to her son. The court then held that Merle Shelton was not liable for his mother's injuries, finding that he had not created a dangerous or hazardous condition calling for either removal of the residue or warning of its existence. The district court, however, did hold that Aetna Casualty and Surety Company was liable for $117.75 in medical payments still outstanding to Dr. McMains and awarded judgment in that amount in favor of the substituted plaintiffs.
The court of appeal affirmed the judgment of the district court with respect to liability for plaintiff's injury. Without specifically denominating plaintiff as either a licensee or an invitee, the court of appeal concluded that, even assuming that Mrs. Shelton was an invitee to whom the higher duty was owed, "the policy considerations underlying her invitee status would not impose a duty upon this landowner to protect her against the injury complained of." In so holding, the court of appeal placed emphasis on the fact that plaintiff was "accorded the everyday privilege of the use of the landowner's entire property, and was treated as any other member of the landowner's household."
Although affirming the trial court with respect to liability for plaintiff's injury, the court of appeal reversed the judgment of the district court with respect to Aetna's liability for the $117.75 in medical expenses, holding that there had been no showing that demand had been made upon Aetna for those payments nor any indication that Aetna had refused to pay the same.
We granted writs upon application of Rosa Lee Shelton, Iris S. Ritter, Barney L. Shelton and Lois S. Matherne, plaintiff and substituted plaintiffs herein.
Liability of a landowner under circumstances such as those involved in the instant case is based on the concept of fault under Article 2315 and 2316 of the Louisiana Civil Code. In order to determine whether liability exists under the facts of a particular case, this Court has adopted a duty-risk approach. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Dixie Drive It Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962). See Robertson, Reason Versus Rule in Louisiana Tort Law: Dialogues on Hill v. Lundin & Associates, Inc., 34 La.L.Rev. 1 (1973).
It is well settled that for alleged wrongful conduct to be actionable negligence it must be found to be a cause in fact of the resulting harm. Jones v. Robbins, 289 So.2d 104 (La.1973); Dixie Drive It Yourself System v. American Beverage Company, supra., Mixon v. Allstate Insurance Co., 300 So.2d 232 (La. App. 2d Cir.), writ refused, 303 So.2d 179 (La.1974). This determination of whether the conduct complained of bears a causal connection in fact to the occurrence of the accident is properly made without reference to those policy considerations required when ascertaining liability by the duty-risk approach. Thus if the plaintiff can show that he probably would not have suffered the injury complained of but for the defendant's conduct, he has carried his burden of proof relative to cause in fact. See Stewart v. Gibson Products Company of Natchitoches Parish Louisiana, Inc., 300 So.2d 870 (La.App. 3rd Cir. 1974); Malone, Ruminations on Dixie Drive It Yourself versus American Beverage Company, 30 La.L.Rev. 363 (1970). In the instant case, as noted by the court of appeal, there is little doubt that the accident would not have occurred but for the presence of the "goo" created when the landowner washed the paint remover off the garage.
A finding that defendant's conduct was the cause in fact of plaintiff's injury, however, does not establish liability. In addition, we are required to ascertain whether the landowner breached a legal duty imposed to protect against the particular risk involved. Smolinski v. Taulli, *410 276 So.2d 286 (La.1973); Hill v. Lundin & Associates, Inc., supra.; Pierre v. Allstate Insurance Co., 257 La. 471, 242 So.2d 821 (1971); Page v. Green, 306 So.2d 847 (La.App. 2d Cir. 1975). In making this determination, the following inquiries must be made: (1) What, if any, duty was owed by the landowner to the plaintiff? (2) Was there a breach of this duty? (3) Was the risk, and harm caused, within the scope of protection afforded by the duty breached? Jones v. Robbins, supra.; Hill v. Lundin & Associates, Inc., supra.; Thomas v. Hanover Insurance Co., 321 So.2d 30 (La.App. 3rd Cir. 1975).
Traditionally the duties of an owner or occupier of land, for the purpose of determining liability in negligence actions brought under articles 2315 and 2316 of the Louisiana Civil Code, have been defined in terms of the status of the person entering the land. Cothern v. LaRocca, 255 La. 673, 232 So.2d 473 (1970); Foggin v. General Guaranty Insurance Co., 250 La. 347, 195 So.2d 636 (1967); Alexander v. General Accident Fire and Life Assurance Corp., 98 So.2d 730 (La.App. 1st Cir. 1957). This was the approach utilized by both the district court and the court of appeal in the instant case. Recently, however, this Court in Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La.1976) noted that "[w]e find the common law classifications of inviteelicensee-trespasser to be of little help in applying C.C. 2315." In so stating, we indicated that the proper test to be applied in determining a landowner's liability under articles 2315 and 2316 of the Civil Code is "`whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others,'" and, as we related, "`although the plaintiff's status as a trespasser, licensee, or invitee may in light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative.'" Cates v. Beauregard Electric Cooperative, Inc., supra, quoting Rowland v. Christian, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968).
Thus in determining the duty owed by Merle Shelton to his mother it is is not necessary to classify Mrs. Shelton as an invitee or licensee, but rather it is appropriate to ascertain this duty by examining the particular facts before us. In this regard we note that Mrs. Shelton and her husband had been given a usufruct to the apartment at the rear of Lot 1. She had, however, implied permission to use the remainder of Lot 1 and Lot 2 on an everyday basis and apparently frequently used the garden and swing area involved in the instant case. Under these facts and circumstances, the landowner owed the plaintiff a duty to discover any unreasonably dangerous conditions on the premises and to either correct the condition or warn his mother of its existence. Natal v. Phoenix Assurance Co., 305 So.2d 438 (La.1974); Foggin v. General Guaranty Insurance Co., 250 La. 347, 195 So.2d 636 (1967); Alexander v. General Accident Fire and Life Assurance Corp., supra.; Millet v. Allstate Insurance Co., 319 So.2d 803 (La.App. 1st Cir. 1975).
We conclude, however, that this duty was not breached. There has been no showing that the condition created when the paint remover was washed off the garage was unreasonably dangerous and thus under these facts we will not impose on the landowner a duty of prior discovery, correction and/or warning. The duty of a landowner is not to insure against the possibility of an accident on his premises, but rather to act reasonably in view of the probability of injury to others. Thus the landowner is not liable for an injury resulting from a condition which should have been observed by an individual in the exercise of reasonable care or which was as obvious to a visitor as to the landowner. Alexander v. General Accident Fire and Life Assurance Corp., supra.; Crittenden v. Fidelity and Casualty Co., 83 So.2d 538 *411 (La.App. 2d Cir. 1955). Such is the situation under the facts of this case, taking into consideration the apparently small area affected by the "solution," the plaintiff's familiarity with the property and its ground surface, and the fact that the condition was not especially unlike normally wet ground.
Having concluded that there was no breach of duty on the part of the landowner, we need not inquire whether the risk and harm caused were within the scope of protection afforded by the duty. On the basis of the above discussion, we thus agree with the district court and the court of appeal that the landowner is not liable for the injuries his mother received when she fell on his premises.
With respect to the $117.75 in medical expenses, however, we conclude that it was error for the court of appeal to reverse the lower court judgment in favor of the substituted plaintiffs, Iris Shelton Ritter, Barney L. Shelton, and Lois S. Matherne. While in its answer to the appeal, Aetna Casualty contested this award, the motion and order for appeal and the appeal bond both indicate that only Rosa Lee Shelton, and not the other plaintiffs, perfected an appeal.
Article 2133 of the Louisiana Code of Civil Procedure provides as follows:
"An appellee shall not be obliged to answer unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer. Additionally, however, an appellee may by answer to the appeal, demand modification, revision, or reversal of the judgment insofar as it did not allow or consider relief prayed for by an incidental action filed in the trial court. If an appellee files such an answer, all other parties to the incidental demand may file similar answers within fifteen days of the appellee's actions."
The article does provide that by answering an appeal, an appellee, without filing an appeal on his own behalf, may seek relief from any portion of the judgment rendered against him in favor of the appellant. It does not, however, give to an answer the effect of an appeal with respect to any portion of the judgment rendered against him in favor of a party not an appellant. See Shaw v. Travelers Insurance Co., 293 So.2d 568 (La.App. 3rd Cir.), writ denied, 295 So.2d 815 (La.1974); Advertiser, Division of the Independent Inc. v. Tubbs, 208 So.2d 340 (La.App. 3rd Cir. 1968).
For the foregoing reasons, the judgment of the court of appeal which denied the claim for damages by the plaintiff, Rosa Lee Shelton, against the defendants, Merle Shelton and the Aetna Casualty and Surety Company, is affirmed.
The judgment of the Court of Appeal with respect to the $117.75 in medical expenses is reversed and set aside and the judgment of the district court is reinstated and affirmed. All costs of these proceedings are to be paid by appellant, Rosa Lee Shelton.
Affirmed in part, reversed in part, and rendered.
SUMMERS and MARCUS, JJ., concur.