BLANCHE, Judge.
This is an action by plaintiff, Elizabeth Verdin, to recover for personal injuries received by her as a result of a fall on the front porch of a house owned by the defendant, The South Coast Corporation, on its Ashland Plantation in Terrebonne Parish. Also made a defendant was South Coast’s insurer, Aetna Life and Casualty Insurance Company. Mrs. Verdin’s husband, Enos Verdin, seeks recovery of medical expenses incurred as a result of her injuries.
The trial judge found that a lessor-lessee relationship existed between the parties and that the defendant was responsible for plaintiffs’ damages under LSA-C.C. art. 2695 but that Mrs. Verdin, through her own negligence, contributed to the accident and recovery was denied. He also found defendant negligent under LSA-C.C. art. 2315 for failure to provide a safe means of ingress and egress to the leased premises but denied recovery for the same reason. We affirm the dismissal of plaintiffs’ suit but for different reasons than those assigned by the trial judge.
First, we find that no lessor-lessee relationship existed between the parties, and second, that there was no breach of duty by the defendant toward plaintiffs. Consequently, we do not reach the issue of Mrs. Verdin’s negligence.
We adopt from the trial judge’s opinion the following factual recitation:
“Mrs. Verdin is 47 years of age and has been married to Mr. Verdin for about 30 years. They have lived in the house where the accident happened approximately 25 or 26 years.
“Testimony established that Mr. Verdin had been employed by the defendant, South Coast Corporation, for a number of years and had been allowed as a part of his employment to live rent free in the house where this accident occurred. In 1971 Mr. Verdin was injured and received a workmen’s compensation settlement from South Coast, and was allowed to continue living in the house although he was disabled and unable to perform any work or service for said company. Further, Mr. and Mrs. Verdin were allowed to live in said house without the payment of any rent or the performance of any service or work for the company.
“Shortly before the accident, Mrs. Ver-din left the house and went outside. When she started back into the house she climbed the front steps and when she stepped upon the porch she tripped over the edge of the porch floor where it joins the steps, and fell on the porch injuring her back. Exhibits ‘J-8’, ‘J-9’ and ‘J-10’ are photographs which clearly show the condition of the steps and the porch, as well as the area where Mrs. Verdin claims she tripped, or caught her foot, and fell. These photographs show and corroborate the testimony of Mr. and Mrs. Verdin that the boards of the porch extend slightly over the edge of the top step and also that several of the boards are not nailed and secured at that point but are slightly raised creating a small opening or area between the ends of the boards constituting the floor of the porch and the top step. Exhibit ‘J-8’ has been marked with the letter ‘A’ showing the board where Mrs. Verdin claims she caught her foot causing the fall. While there are no exact measurements showing the distance between the bottom of that board and the top of the step, the court would estimate that distance to be about an inch or an inch and a half. It is this condition or defect which plaintiffs claim was the cause of Mrs. Verdin catching her foot, tripping and falling on the porch causing her to be injured.
“It has been established beyond all doubt that the house was owned by defendant, South Coast Corporation. It has also been established, and it is not disputed, that Mr. Verdin had been employed by South Coast Corporation and that he and his wife had continuously lived and resided in said house for about 25 years with the consent and permission of South Coast Corporation. It has been further established that Mr. Verdin had been injured and was disabled and received a *1003 compensation settlement from South Coast Corporation in 1971, and although he had not performed any work or other service since his injury in 1971, as a former employee he and his wife were allowed to continue living in said house without the necessity of paying any rent.” (Record, pp. 56-58)
After the foregoing recitation, the trial judge then reasoned that although Mr. Ver-din did not pay any money for his occupancy and use of the premises, nevertheless, there was consent between the parties to a lease because “no effort was ever made to evict them or have them removed from said premises. Furthermore, Mr. and Mrs. Ver-din had earned the right to live in said house.” We do not find these reasons persuasive. We are convinced that after Mr. Verdin had retired or became unable to work because of disability his continued use of the property was by virtue of a custom that grew out of a paternalistic concern of sugar planters toward their old and faithful employees.
Earl S. Gravoir testified regarding the permissive use of the property by old employees and stated that in the twenty-seven years he was employed in the management of South Coast neither he nor anyone else, to his knowledge, ever told a worker that as a condition of employment the worker would be entitled to remain upon the property upon his retirement. He further testified that it was a custom in the industry to allow workers to stay on if the housing was available and not needed for another purpose, and this was permitted because the landowner knew that some of their people would have no other place to go.
Allowing workers to stay on the property after their retirement under these conditions certainly implies consent or permission to use the property, but we do not believe the mere sufferance of use by a landowner under these conditions constitutes a lease agreement. The Louisiana Civil Code provides:
“Art. 2670. To the contract of lease, as to that of sale, three things are absolutely necessary, to wit: the thing, the price, and the consent.”
We are unable to supply such consent from the foregoing facts so as to hold that there was either an intended or implied lease of the property.
In deciding whether defendant was guilty of negligence under Article 2315, we find that the condition of the steps was the cause in fact of the accident and injury to Mrs. Verdin but that the failure to repair the steps or give warning to plaintiffs as to their condition was not actionable. Plaintiffs lived on the premises, walked up and down the steps every day, and if the condition of the steps posed such a danger, plaintiffs either could have repaired the steps themselves or at least have avoided them.
Applicable here is a quotation from the case of Shelton v. Aetna Casualty & Surety Company, 334 So.2d 406 (La.1976), as follows:
“The duty of a landowner is not to insure against the possibility of an accident on his premises, but rather to act reasonably in view of the probability of injury to others. Thus the landowner is not liable for an injury resulting from a condition which should have been observed by an individual in the exercise of reasonable care or which was as obvious to a visitor as to the landowner. [Citations omitted].”
(334 So.2d at 410)
For the above reasons, the judgment of the trial court is affirmed, at appellants’ costs.
AFFIRMED.