343 So.2d 449 (1977)
Lucy LECOMPTE et al., Plaintiffs and Appellees,
v.
STATE of Louisiana, Through the DEPARTMENT OF PUBLIC SAFETY, Defendant and Appellant.
No. 5828.
Court of Appeal of Louisiana, Third Circuit.
March 4, 1977.
*450 James C. Dixon, Baton Rouge, for defendant-appellant.
Andrus & Andrus by James P. Doherty, Jr., Opelousas, for plaintiff-appellee.
Before CULPEPPER, GUIDRY and FORET, JJ.
CULPEPPER, Judge.
The plaintiff, Mrs. Lucy Lecompte, seeks damages for personal injuries, sustained when she tripped and fell in the parking lot of the building occupied by the Driver's License Bureau operated by defendant in Opelousas, Louisiana. The trial judge found the accident was caused by the negligence of defendant in allowing a "blob" of old concrete to remain on the parking area, creating a hazard to pedestrians. An award $10,000 for general damages was made. Defendant appealed. Plaintiff answered the appeal, seeking an increase in the award.
The issues are: (1) Was the accident caused by the negligence of the defendant? (2) Was the plaintiff, Mrs. Lecompte, contributorily negligent? (3) Was the award excessive or inadequate?
The facts are that on February 7, 1973, Mrs. Lecompte and her husband, who were about 65 years of age at the time, went to the Driver's License Bureau operated by the defendant in Opelousas. They parked their pickup truck in the parking lot near the door of the building and then went into the office where Mrs. Lecompte obtained her driver's license. Upon leaving the building, using the same door they had entered, Mrs. Lecompte was walking across the parking lot back toward their pickup truck when she tripped and fell. She suffered a Colles' fracture of her left wrist and bruises to her knees.
The evidence clearly establishes that Mrs. Lecompte tripped on a "lump" of concrete, which was on the surface of the parking lot. Mr. Lecompte was walking beside his wife and he saw her trip. Immediately after the fall, he saw what he described as a "lump" of concrete about 6 inches in diameter and at least 1 inch high. Mr. Lecompte, who is a bricklayer's helper, said that it appeared to be a piece of mortar which had dropped there soft and hardened. He said the surface of the lump was rough and that it was of a grayish color, about the same as the parking lot.
Another witness, Reverend Masciaracina, saw Mrs. Lecompte lying on the parking lot *451 immediately after she fell. He testified the "lump" was about 3 by 4 inches in size and about 1¼ inches high. He also said it appeared to be concrete of a grayish color, about the same color as the parking lot surface.
Both Mr. Lecompte and the priest testified that there was a small sidewalk, for a distance of about 6 feet, from the door to the parking lot area, and that the lump was about 6 feet from the end of the walk and almost immediately in front of the door where pedestrians walked.
A defense witness, Abner Boudreaux, testified he was the custodian of the building, and that immediately after Mrs. Lecompte fell he was instructed to go and remove the lump. He said he hacked it off with a hammer in a few minutes. He described the lump as about 2 by 3 inches in size and about ½ to 3/4 of an inch high and of a grayish color. However, he said the lump was on the asphalt parking lot which is black. Also, he said the lump was about 20 feet from the door.
Mr. Dixon, the office manager, described the lump about the same as Mr. Boudreaux. Dixon also testified that his office issues 10,000 to 15,000 driver's licenses per year and that no one else had ever fallen on the lump. He said neither he nor any of his employees had ever noticed the lump before.

NEGLIGENCE OF THE DEFENDANT
In its brief the defendant takes the position that persons coming to the premises to obtain a driver's license should be classified as licensees rather than invitees for the purpose of determining the duty owned them by defendant. In the recent case of Shelton v. Aetna Casualty & Surety Company, La., 334 So.2d 406 (1976) our Supreme Court stated:
"Recently, however, this Court in Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La.1976) noted that `[w]e find the common law classifications of invitee-licensee-trespasser to be of little help in applying C.C. 2315.' In so stating, we indicated that the proper test to be applied in determining a landowner's liability under articles 2315 and 2316 of the Civil Code is `"whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others,"' and, as we related, `"although the plaintiff's status as a trespasser, licensee or invitee may in light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative."'"
Applying this rule to the present case, the determinative question is not whether Mrs. Lecompte was a licensee or an invitee. The question is whether the "lump" of concrete on which Mrs. Lecompte tripped created an unreasonable risk of foreseeable injury to the many pedestrians who walked across this area of the parking lot immediately in front of the door.
The first question is whether the "lump" was unreasonably dangerous. If the size and height of the lump was as described by plaintiff's witnesses, Mr. Lecompte and Reverend Masciaracina, i.e., approximately 1 inch to 1¼ inches high and 4 inches to 6 inches in diameter, and if it was of about the same color as the surface of the parking area on which it was located, then we conclude there was a reasonable evidentiary basis to support the conclusion of the trial judge that was an unreasonably dangerous hazard to the many pedestrians who walked this way.
There are many cases in our jurisprudence involving defects and foreign objects on walkways and passageways. Our courts have found small defects to be unreasonably hazardous under the circumstances. In Daire v. Southern Farm Bureau Casualty Insurance Company, 143 So.2d 389 (La.App. 3rd Cir. 1962), writ of certiorari denied, the court found the proprietor negligent where the head of a large nail protruded about ½ inch above the floor of the porch on a fishing camp. In Bergeron v. Employers-Commercial Union Companies, 306 So.2d 367 (La.App.3rd Cir. 1975) a customer in a store tripped on a welcome mat or rug, the edge of which was turned up. The court held that was an unreasonable hazard.
*452 Each of these cases must be decided on its own facts. Although we think there is a close question in the present matter as to whether this "lump" of concrete constituted an unreasonably dangerous hazard to pedestrians, we are unable to say that there was not a reasonable evidentiary basis to support the factual conclusion of the trial judge. Canter v. Koehring Company, La., 283 So.2d 716 (1973).

CONTRIBUTORY NEGLIGENCE OF MRS. LECOMPTE
As stated above, plaintiff's witnesses said the "lump" of concrete was of a grayish color about the same as the parking lot. The witnesses for defendant said the "lump" was of a grayish color, but the parking lot was black asphalt. Defendant also stresses the fact that it was about noon on a clear day. Despite this conflict in the testimony, the trial judge could have accepted the testimony of plaintiff's witnesses that the "lump" was about the same color as the surface of the parking lot on which it was located and thus not readily observable. There is no question that this was the only "lump" or defect in the immediate area, nor is there any question that this was a portion of the parking lot immediately in front of the doorway which was used by many pedestrians.
Of course, pedestrians have the duty to use reasonable care under the circumstances for their own safety. In the present case, the district judge concluded that Mrs. Lecompte was not contributorily negligent in failing to see this lump before she tripped on it. This may also be a close question of fact, but we are unable to say that there was not a reasonable evidentiary basis for the trial judge's conclusion. Canter v. Koehring, supra.

THE QUANTUM OF THE AWARD
The trial judge awarded $10,000 in general damages for the personal injuries suffered by Mrs. Lecompte. She suffered abrasions of the knee and a Colles' fracture of the left wrist which required 2 or 3 days of hospitalization on two occasions and a cast which she wore for several weeks. At the time of the trial, about three years after the accident, plaintiff was still having subjective complaints of swelling, loss of use and pain in her left hand. The treating physician testified she had about an 8% residual disability of the left hand.
Under the circumstances, we find the award of $10,000 was within the large discretion of the trial judge as to the quantum of awards in personal injury cases.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant-appellant.
AFFIRMED.